**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DENNIS EDWARD FRASER,

        Plaintiff,

v.

                                          Case Number: 09-14906
                                          Honorable Denise Page Hood

LIVINGSTON COUNTY,
COUNTY SHERIFF ROBERT BEZOTTE,
TARA BLACK,
SHANA ADKINS,

        Defendants.
_____/

        This matter is before the Court on Defendants Livingston County and Robert Bezotte's

Motion to Dismiss [dkt # 17], and Defendants Tara Black and Shana Adkin's Motion for Summary

Judgment [dkt #19]. *Pro se* Plaintiff Dennis Fraser filed a response to each motion, and a hearing

was held on March 23, 2010. For the reasons set forth below, the Defendants' Motion to Dismiss

is GRANTED, and the Defendants' Motion for Summary Judgment is GRANTED.

**I. STATEMENT OF FACTS**

        On December 18, 2009 Plaintiff initiated this action against Defendants Livingston County,

Michigan, Livingston County Sheriff Robert Bezotte, Tara Black, and Shana Adkins. Plaintiff

brings a number of claims: malicious prosecution and unlawful imprisonment (Count I), unlawful

arrest (Count II), and unlawful garnishment and abuse of process (Count III). Plaintiff also makes

various allegations of intentional infliction of emotional distress against all defendants, and claims

false statements against Defendants Tara Black and Shana Adkins.

        This case arises from disputes and legal actions regarding the estate of Plaintiff's deceased

mother, Joyce Fraser. Joyce Fraser died of natural causes on July 2, 2005. Following her death,

Plaintiff and his sister, Cherlynn T. Bennett, filed an application for Informal Probate in the

Livingston County Probate Court, and were appointed co-representatives of the Estate by the Livingston County Deputy Register of Probate. Dkt. 11, Defs.' Answer, Ex. A-A. Approximately eight months later, Cherlynn T. Bennet and Plaintiff executed a Purchase Agreement with Dana Bennett to sell him the decedent's property in Dearborn Heights, Michigan. Prior to the closing of the sale, Cherlynn T. Bennett was killed in a motorcycle accident. *Id.* ¶ 9. Cherlynn T. Bennett's sole devisee under her Last Will and Testament was her daughter Shana D. Adkins. Defs.' Br. in Supp. of Mot. for Summ. J. at 4.

Following Ms. Bennett's death, Plaintiff continued with the sale of the property. The sale closed on June 30, 2006, for a net proceed of $103,523.74, the balance of which was distributed to the estate of Joyce Fraser by Vanguard Title Insurance Agency. *Id.*; Answer, Ex. A-D. The record reflects that Plaintiff deposited the sale proceeds into an interest-bearing checking account at SunTrust Bank in Homosassa, Florida in the name of the Estate of Joyce Fraser. *Id.* He then submitted a $6,972.37 reimbursement to Dana Bennett for expenses incurred prior to closing resulting from multiple code violations and the obtainment of a certificate of occupancy. *Id.*

Defendants claim that at this point, Plaintiff and Shana Adkins, as the sole devisee of Cherlynn Bennett, were each entitled to one-half of the net sale proceeds, or $48,275.69 each. *Id.* Plaintiff claims, however, that Shana Adkins was not entitled to the full amount of $48,275.69 owing to acts of fraud committed by Cherlynn T. Bennett that included renting the home of Joyce Fraser to several tenants between 1999 and May 21, 2006, and wrongfully diverting the rent money to herself. Plaintiff claims that Cherlynn T. Bennett "held Durable Power of Attorney for Joyce V. Fraser and was forbidden by the Durable Power of Attorney from diverting assets to herself, her estate, or her creditors." Compl. ¶ 14.

Defendants claim that following the closing, Plaintiff misappropriated Estate funds, writing two checks to creditors totaling $49,110.45, and another check to himself in the amount of $30,000.00. Answer, Exs. D-F. On January 26, 2007, Plaintiff submitted a cashier's check to Shana Adkins in the amount of $18,192.17, along with a statement "itemizing reductions to the amount Cherlynn was entitled based on the assets that were part of the Estate of Joyce V. Fraser." Answer, Ex. H. According to Plaintiff, this payment constituted the final distribution of all assets of the estate. *Id.*

Shana Adkins instituted legal proceedings in Livingston County Probate Court in an attempt to collect the balance she believed she was owed under the Estate. On October 23, 2007, Plaintiff failed to appear for an evidentiary hearing, resulting in the Court entering an Order of Dismissal of Objections to Final Account and to Turn Over Estate Assets. Answer, Ex. I. Pursuant to the order, Plaintiff was to return estate assets totaling $30,663.48 and pay $5,000 to Shana Adkins' attorneys for fees and costs, and Shana Adkins was appointed as Second Successor Personal Representative of the Estate. Answer, Ex. B-I, *In Re Estate of Fraser*, No. 05-08321, Probate Court for the County of Livingston (Oct. 23, 2007). On November 5, 2007 the Livingston County Probate Court denied Plaintiff's Motion for Summary Disposition, rejecting "in its entirety" his argument that he was entitled to sole ownership of the estate.

Plaintiff failed to comply with the October 23, 2007 Order, and a Show Cause Hearing was scheduled for January 15, 2008. Plaintiff failed to appear for the Hearing. A second Hearing was scheduled for February 12, 2008. Plaintiff again failed to appear, resulting in the issuance of a bench warrant by Judge Carol Hackett Garagiola for Plaintiff's arrest. Defs.' Br. in Supp. of Mot. for Summ. J. at 6.

3

Also on February 12, 2008, Defendant Tara Black, attorney for Defendant Shana Adkins, submitted a letter to Livingston County Sheriff's Department Detective Al Steinaway, requesting he investigate Plaintiff for possible violations of Michigan Compiled Laws § 750.176, Embezzlement by a Fiduciary, citing Plaintiff's wrongful distribution of assets and failure to comply with the Livingston County Probate Court Order to turn over assets of October 23, 2007. Plaintiff claims that in her complaint to the Sheriff's Department, Defendant Tara Black falsely represented that the former residence of Joyce Fraser had been vacant since the time Joyce Fraser moved out of the house and into a nursing home in Livingston County. As noted above, Plaintiff contends that the house was occupied for the span of seven years by tenants from whom Cherlynn T. Bennett collected rent. Compl. ¶ 28.

On February 22, 2008 a request for Writ of Garnishment against Plaintiff was filed by Shana Adkins with the Livingston County Probate Court. Compl. ¶ 24. The request was granted on February 29, 2008. On March 10, 2008 SunTrust Bank was served with the Writ of Garnishment, signed by Tara Black. On March 12, 2008 SunTrust Bank confiscated $718.80 of Plaintiff's assets in accordance with the Writ. *Id.* Plaintiff filed an objection to the writ, and a hearing was held on the objections on April 15, 2008. Plaintiff was not present for the hearing. During the hearing, Plaintiff's attorney argued that the writ improperly sought assets held by a third party outside the state of Michigan in violation of Michigan Compiled Laws § 600.411(1)(a). The court agreed, quashed the Writ, scheduled a third Show Cause hearing for May 6, 2008. Plaintiff failed to appear for this show cause hearing, resulting in the issuance of a second bench warrant against him, with cash bond in the amount of $41,000. Answer, Ex. C, *In Re Estate of Fraser*, No. 05-08321, Probate Court for the County of Livingston (May 6, 2008).

4

In the meantime, the Livingston County Prosecutor filed an information and complaint against Plaintiff pursuant to Michigan Compiled Laws § 750.176, Embezzlement by a Fiduciary. The charges were based upon an investigation conducted by the Livingston County Sheriff's Department. *See* Dkt. 26, Ex. K. On May 7, 2008, a request for extradition was submitted to the Citrus County Sheriff's Department in Florida, and on that same day Plaintiff was arrested at his home in Homosassa, Florida pursuant to the warrant issued against him by Livingston County for the felony of embezzlement. Dkt. 26, Ex. O. Plaintiff was jailed without bond. Compl. ¶ 31. On May 14, Plaintiff signed a waiver of extradition and was released. *Id.* ¶ 32; Dkt. 26, Ex. O. On May 23, 2008 Plaintiff appeared before the Livingston County Magistrate and was arraigned on charges of embezzlement by Administrator, Executor, or Guardian, Mich. Comp. Laws § 700.176. He was released on a personal recognizance bond, allowed to return to Florida, and ordered to appear before the Livingston County District Court on July 2, 2008 for a preliminary hearing.

On July 2, 2008, while Plaintiff was waiting to appear before the Livingston County District Court, Plaintiff was arrested by a Livingston County Sheriff Deputy pursuant to the two bench warrants issued against him by the Livingston County Probate Court. Plaintiff claims he told the arresting officer that he was to appear that day before Livingston County District Court Judge Suzanne Geddis regarding criminal charges against him, and was therefore exempt from arrest. Plaintiff alleges that the arresting deputy stated that she did not care about his criminal problems, and that she was there to arrest him on two outstanding bench warrants. Compl. ¶ 35. According to Defendants, a short time after his arrest, Plaintiff was brought before Probate Judge Garagiola and arraigned on a charge of contempt of court, and that at no time during those proceedings did Plaintiff tell the judge that he believed he was exempt from arrest. Defs.' Br. in Supp. of Summ. J. at 7.

5

Judge Garagiola scheduled the matter for trial and released Plaintiff on a $41,000 cash bond, which he posted and was subsequently released.

On July 17, 2008, a consent order was entered in the Probate matter whereby Plaintiff agreed to release the cash bond to Defendant Shana Adkins' attorneys in exchange for her withdrawal of contempt proceedings. Answer, Ex. D. On October 15, 2008, a motion hearing was held in the Probate Court regarding the closing of the estate of Joyce Fraser. Compl. ¶ 37. According to Defendants, on August 13, 2008 Shana Adkins attempted to close the Estate of Joyce Fraser by submitting her Sworn Statement to Close Unsupervised Administration pursuant to Michigan Compiled Laws § 700.3954. Plaintiff filed objections to the Sworn Statement, which were rejected by the Livingston County Probate Court on April 13, 2009 on a determination that the objections were, among other things, time barred and a matter of *res judicata*. Answer, Ex. E, Order Denying Objection. On June 9, 2009 the Livingston County Probate Court entered an Order for Complete Estate Settlement, formally closing the Estate of Joyce Fraser. Defs.' Br. in Supp. of Summ. J. at 9.

On August 11, 2008 Plaintiff appeared before the Livingston County Circuit Court for pre-trial proceedings regarding the criminal charges of embezzlement pending against him. The Livingston County Prosecuting Attorney failed to appear. Trial in the matter was ultimately scheduled for November 3, 2008, but on October 30, 2008 the charges were dismissed *nolle prosequi* by the Livingston County Prosecutor. Compl. ¶¶ 35, 37.

On December 18, 2009, Plaintiff initiated this lawsuit against the Defendants requesting they be held jointly and severally liable for actual, special, and compensatory damages of $300,000.00 and for punitive damages of $300,000.00. Compl. ¶ 38. On March 23, 2010 Plaintiff filed a motion

to amend his complaint to "alter the jurisdiction paragraph to include Title 42 U.S.C. 1983 and Title 42 U.S.C. 1985." Dkt. # 22, Motion to Amend Compl.  This motion was denied by Magistrate Judge Whalen on March 30, 2010 on the grounds that Plaintiff's original complaint is based solely upon Michigan Law, does not contain any allegations or facts that would support federal civil rights claims under either § 1983 or § 1985, and therefore would not survive a motion to dismiss.  Dkt. # 28, Order Denying Mot. to Amend Compl.

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a party to file a motion to dismiss for failure to state a claim upon which relief can be granted.  A motion to dismiss tests the legal sufficiency of the plaintiff's complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  A court takes the factual allegations in the complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6).  *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp. 2d 575, 577 (E.D. Mich. 1999).  The Court construes the complaint in the light most favorable to the plaintiff.  *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

As the Supreme Court has stated, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1950-51 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

7

on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks

for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line

between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557.

### B.  Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedures provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  A party wishing to establish absence of a

genuine issue must support its assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).[1]  "The presence of factual disputes will preclude granting of

---

[1]Amendments to Federal Rule of Civil Procedure 56 became effective on December 1, 2010. Both the Supreme Court and the Sixth Circuit have applied the revised rule when reviewing a lower court's grant of summary judgment based upon the old standard.  *See Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011) (quoting the language of Revised Rule 56(a)); *111 Debt Acquisition Holdings, L.L.C. v. Six Ventures Ltd.*, No. 09-4436, 2011 WL 383003, at *3 (6th Cir. Feb. 7, 2011) (quoting both Revised Rule 56(a) and 56(c)(1)(A)).  A number of district courts (but not all) have applied the new standard in deciding motions for summary judgment filed before the revisions became effective. The advisory committee notes state:

> Rule 56 is revised to improve the procedures for presenting and deciding

summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c) [Revised Rule 56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If, after sufficient opportunity for discovery, the nonmoving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23. Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

---

summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Fed. R. Civ. P. 56 advisory committee's note. Given the committee's assertion that the amendments will not affect the law construing the standard, and the Supreme Court and Sixth Circuit's citation of the new standard, it is proper, as of December 1, 2010, to cite the Revised Rule in analyzing a party's motion for summary judgment, even if filed prior to that date.

Plaintiff argues that further discovery will support his claims.  As will be discussed below, this argument is without merit.[2]  Taking all of Plaintiff's factual allegations as true (those raised in his complaint, his response, and the affidavit he has submitted to the Court), and viewing those exhibits outside the pleadings that Plaintiff has submitted in support of his arguments, his claims do not survive a motion for summary judgment, and discovery would not affect the Court's disposition on the merits.  Summary judgment is appropriate when discovery would not produce facts needed to withstand a motion for summary judgment.  *See Local Union 369, Int'l Bhd. of Elec. Workers, AFL-CIO v. ADT Sec. Servs., Inc.*, 393 F. App'x 290, 295 (6th Cir. Aug. 27, 2010) (upholding District Court's grant of summary judgment where desired discovery would not have changed the ruling below because it would have been irrelevant to the dispositive issue); *Michigan State AFL-CIO, Int'l Union v. Miller*, 6 F. Supp. 2d 634, 636 (E.D. Mich. 1998) (denying request for discovery prior to issuing a decision on a motion for summary judgment where no genuine issues of material fact remained following remand by Sixth Circuit); *see also Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989) ("[A] plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion."). Importantly, the factual allegations that Plaintiff raises in this case are not relevant to the present lawsuit, and are instead targeted to undermine the judgment entered against him by the Livingston County Probate Court.  Permitting discovery on issues such as whether Plaintiff's mother's home was occupied by renters prior to her death would not result in the discovery of genuine issues of material fact to the case at hand.

---

[2]The record indicates that the parties have not yet participated in discovery in this case.

## III. APPLICABLE LAW & ANALYSIS

### A. Plaintiff's Arguments Pursuant to 42 U.S.C. § 1983

Although the Magistrate Judge denied Plaintiff's request to amend his complaint to include "jurisdiction" pursuant to 42 U.S.C. § 1983, Plaintiff nevertheless presents arguments under § 1983 in his response to Defendants Livingston County and Bezotte's Motion to Dismiss.[3]  Generally, § 1983 provides a cause of action for constitutional violations by the state against employees or private citizens. *See, e.g.*, *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 611 (2008).  A plaintiff's failure to plead or reference § 1983 in its complaint does not preclude a court from construing violations under the statute so long as the complaint claims a violation of rights "secured by the federal Constitution or laws . . . by a person acting under color of state law," *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (only notice pleading is required for actions under § 1983); *Majeske v. Bay City Bd. of Educ.,* 177 F. Supp. 2d 666, 670-71 (E.D. Mich. 2001) (plaintiff's complaint alleging denial of due process under the Constitutions of United States and the State of Michigan was sufficient to state a claim arising under § 1983).  Plaintiff's complaint does not allege a violation of a federal constitutional or legal right.  Notably, Plaintiff's only reference to his constitutional rights in the complaint is his jury demand.

Even if the Court were to address Plaintiff's § 1983 arguments, they would not survive Defendants' Motion to Dismiss.  A plaintiff may not maintain an action under § 1983 under the

---

[3]These arguments include: (1) the Livingston County Sheriff lacked probable cause to arrest Plaintiff in the criminal matter in violation of the Fourth Amendment; and (2) the Livingston County Sheriff violated Plaintiff's Fourth Amendment rights when it arrested him in violation of clearly established Michigan law.

11

theory of respondeat superior.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691

(1978).  Plaintiff has sued the County and the County Sheriff, but not the arresting deputy, the

investigating detective, the county prosecutor, or any actors that personally committed the alleged

violations, nor has he argued that the alleged violations were pursuant to a custom or policy of the

County or Sheriff's Department.  Generally speaking, without a demonstration of a municipal policy

or custom that caused the alleged constitutional violation, a plaintiff may not maintain a claim

against a municipality under § 1983.  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)); *see also Barnett v. Luttrell*, No.

08-6432, 2011 WL 831528, at *5 (6th Cir. Mar. 10, 2011) (finding § 1983 claim against Sheriff

failed where Plaintiff did not assert the Sheriff's personal participation in or encouragement of

alleged constitutional violation).

### B.  Governmental Immunity Under the Governmental Tort Liability Act

#### 1.  Defendant Livingston County

Defendant Livingston County argues that it is immune from tort liability pursuant to the

Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1407.  Under the GTLA, a

governmental agency, such as a county, is immune from tort liability if the governmental agency "is

engaged in the exercise or discharge of a governmental function," Mich. Comp. Laws § 691.1407(1),

unless the plaintiff establishes the existence of a statutorily created exception to that immunity.

*Odom v. Wayne Cnty.*, 482 Mich. 459, 477-78, 760 N.W.2d 217, 227 (2008).  These narrowly-drawn

exceptions are: Mich. Comp. Laws § 691.1402 (defective highway exception); Mich. Comp. Laws

§ 691.1405 (motor vehicle exception); Mich. Comp. Laws § 691.1406 (defective public building

exception); Mich. Comp. Laws § 691.1413 (propriety function exception); and Mich. Comp. Laws

§ 691.1407 (public hospital exception). *Wesche v. Mecosta Cnty. Rd. Comm'n*, 480 Mich. 75, 84 n.10, 746 N.W.2d 847, 853 n.10 (2008). In order to survive a dispositive motion, a plaintiff has the burden of establishing that the alleged claims fall within an exception to governmental immunity. *Odom*, 482 Mich. at 477-78, 760 N.W.2d at 227. Plaintiff has not pointed to any conduct by Livingston County in which it acted beyond its governmental function, nor has he argued that any of the statutory exceptions to its immunity applies. Accordingly, Defendant Livingston County's Motion to Dismiss on all Counts is GRANTED.

### 2. Defendant Robert Bezotte

Under the GLTA, the "elective or highest appointive executive official" of a level of government is afforded absolute immunity from tort liability for injuries occurring while that official is "acting within the scope of his or her . . . executive authority." Mich. Comp. Laws § 691.1407(5). As the Sheriff of Livingston County, Robert Bezotte sits as the highest official in the Sheriff's Department.[4] Plaintiff's claims arise out of the Sheriff Department's investigation of criminal allegations against Plaintiff, and arrests executed pursuant to criminal charges and standing bench warrants. Enforcing the laws enacted by the state legislature is the essence of the executive authority granted the Sheriff, *see Nat'l Union of Police Officers Local 502-M, AFL-CIO v. Bd. of Comm'rs of Wayne Cnty.*, 93 Mich. App. 76, 82, 286 N.W.2d 242, 245 (1979), and Plaintiff does not argue otherwise. Accordingly, Defendant Bezotte's Motion to Dismiss on all counts is

---

[4]The office of sheriff is created by the Michigan Constitution, and is afforded duties and powers by Michigan law. Mich. Const. art. 7, § 4; Mich. Comp. Laws § 51 *et seq.* The Sheriff's Department is therefore a "level of government" under the GLTA.

13

GRANTED.[5]

### C. Defendants Tara Black and Shana Adkins

#### 1.  Malicious Prosecution, False Imprisonment, & Abuse of Process

Plaintiff alleges malicious prosecution, false imprisonment, and abuse of process against Defendants Black and Adkins for the criminal charges of embezzlement by an administrator, executor, or guardian issued against him.  Michigan Compiled Laws § 750.176 states, in relevant part:

> Any general or special administrator or any executor or guardian, who has been appointed by a judge of probate and who has collected any goods, chattels, money or effects of the deceased or ward, and who has wilfully appropriated the same to his own use and who has been ordered by the judge of probate forthwith to deliver to his successor in trust, ward or any person lawfully entitled thereto, all the goods, chattels, money or effects of the deceased or ward in his hands, and who shall wilfully omit, neglect or refuse for 60 days to obey said orders, shall be deemed to have committed the crime of embezzlement . . . .

Plaintiff argues that Defendants Black and Adkins (1) lacked probable cause to initiate  the prosecution against him; (2) made false statements to the Sheriff regarding the rental and occupancy of the home of Joyce Fraser and his position as co-representative of the estate; (3) and initiated the prosecution with malice, for the purpose of revenge and intent to damage his business reputation and inflict emotional distress against him.  Compl. ¶¶ 39-54.

Under Michigan law, a plaintiff may sustain a claim of malicious prosecution against a private person upon offering of "proof that the private person instituted or maintained the prosecution and that the prosecutor acted on the basis of information submitted by the private person

---

[5]Although not raised by either party, Mich. Comp. Laws § 51.70 further provides that "[a] sheriff shall not be responsible for the acts, defaults, and misconduct in office of a deputy sheriff." This precludes claims against sheriffs on the basis of vicarious liability for the acts of deputy sheriffs. *Dudley v. Bell*, 50 Mich. App. 678, 680, 213 N.W.2d 805, 807 (1973).

that did not constitute probable cause." *Moldowan v. City of Warren*, 578 F.3d 352, 399 (6th Cir. 2009) (quoting *Matthews v. Blue Cross & Blue Shield*, 456 Mich. 365, 379, 572 N.W.2d 603, 610 (1998)). Want of probable cause is a question of law to be determined by the Court. *Id.* at 396. A prosecutor's exercise of independent discretion is a complete defense to an action for malicious prosecution, *Matthews*, 456 Mich. at 384, 572 N.W.2d at 613; that is, "[u]nless the information furnished was known by the giver to be false and *was the information on which the prosecutor acted*, the private person has not procured the prosecution," 456 Mich. at 384, 572 N.W.2d at 613 (emphasis in original). While "[a] private person's mistake of fact or law is relevant to whether [s]he acted reasonably in initiating or maintaining a criminal proceeding," where it is found that the prosecutor initiated, continued, or maintained the prosecution and had probable cause to do so, a court should resolve the matter as a question of law. 456 Mich. at 386-87, 572 N.W.2d at 613-14.

Plaintiff's claim of malicious prosecution fails on a number of grounds. First, the probate court's order requiring Plaintiff to hand over Estate funds and his failure to timely comply within 60 days alone creates probable cause for the prosecution. Next, the record shows that the prosecution was based upon the independent investigations of the Livingston County Sheriff's Department and the Livingston County Prosecutor, and not solely—or even substantially—upon what Plaintiff claims were the false accusations of fraud and embezzlement by Defendants Black and Adkins.

Plaintiff's claim of false imprisonment likewise fails. To be liable for false imprisonment, a private actor must instigate or participate in an unlawful arrest or imprisonment. *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218-19, 327 N.W.2d 893, 894-95 (1982). Furnishing information to authorities regarding belief that criminal activity has occurred is not sufficient to sustain a claim

15

of false imprisonment or arrest if the authorities instituting the arrest acted on their own judgment and discretion. *Id.*

Plaintiff's claim of abuse of process is also without merit. To sustain a claim of abuse of process, "a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Id.* at 30, 594 (citing *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911)). The improper or ulterior purpose usually takes the form of coercion to obtain a collateral advantage not properly involved in the proceeding itself, such as a form of extortion during the course of negotiations outside the process, rather than the issuance or any formal use of the process itself. *See Three Lakes Assn. v. Whiting*, 75 Mich. App. 564, 573, 255 N.W.2d 686 (1977). Plaintiff argues that Defendants initiated the criminal proceedings against him with the intent to inflict personal and business harm, and to inflict emotional distress. To the contrary, it is clear from the record that Defendants' contact with the Sheriff was a legitimate use of process to attempt to collect upon money owed to them as determined by the probate court's order of October 23, 2007, and to report Defendants' failure to comply with the court order.

For the reasons stated above, Defendants' Motion for Summary Judgment on these claims is GRANTED.

### 2. Unlawful Arrest

Plaintiff next claims that he was unlawfully arrested on civil contempt charges by a Livingston County Sheriff Deputy while attending court on a criminal matter in the Livingston County Court Complex. Compl. ¶ 56. Specifically, Plaintiff claims that "Defendants Tara Black and Shana Adkins conspired with the arresting officer to facilitate and procure the unlawful arrest

16

of Plaintiff for purposes of vexation, avarice, humiliation and malice and to intentionally inflict emotional distress and mental anguish." *Id.* ¶ 59.

Plaintiff was arrested pursuant to two bench warrants issued against him by the Livingston County Probate Court for his failure to appear for three scheduled show cause hearings. Plaintiff does not contest this, nor does he dispute that Defendants had the right to institute contempt proceedings against him for his failure to appear. Rather, Plaintiff bases his claim upon the fact that he was arrested while waiting to appear in the criminal matter against him in violation of Michigan Compiled Laws § 600.1821. Michigan Compiled Laws § 600.1821 states, in relevant part: "No person while he is within this state pursuant to any subpoena issued to compel his appearance in any criminal proceeding pending in this state shall be arrested or detained upon any criminal charge for any offense committed prior to his entry into this state pursuant to the subpoena."

To be liable for false arrest, a private actor must instigate or participate in an unlawful arrest. *Lewis*, 415 Mich. at 218-19, 327 N.W.2d at 894-95 (1982). In his response to Defendants' motion for summary judgment, Plaintiff claims that "Tara Black was observed entering and exiting the District Court several times" prior to his arrest that day, and that both Defendants were present at the time of his arrest.[6] Pl.'s Resp. to Defs.' Mot. for Summ. J. at 15. Plaintiff further claims that he informed the arresting officer that he was exempt from arrest because he was in the court complex pursuant to criminal charges pending against him. *Id.* at 12. He claims that the arresting officer stated that she did not care about his "criminal problems," and that she was arresting him based on two outstanding bench warrants.

---

[6]Plaintiff argues that he will prove these allegations through witness testimony and video evidence obtained through discovery. Such discovery is unnecessary, however, because assuming that his allegations are true, Plaintiff's claim of unlawful arrest still fails.

A party may not be held liable for false or unlawful arrest simply for providing information to authorities that leads to the arrest if the officer acted on her own discretion.   *Lewis*, 415 Mich. at 218-19, 327 N.W.2d at 894-95.   Plaintiff's claim that Defendants "tipped off" the Sheriff's Department as to the Plaintiff's whereabouts on the day of his arrest, and that they were present at the scene of arrest, does not raise a genuine issue of material fact as to whether the officer exercised her own discretion in executing the arrest.   Plaintiff does not allege that Defendants somehow encouraged the arresting officer to make the arrest, or that they in any way misinformed the officer regarding Plaintiff's reasons for being in the state that day.   Plaintiff's claim that he informed the arresting deputy that he was exempt from arrest that day, and that she willfully ignored his plea, only supports the argument that she acted within her own discretion, however bad Plaintiff may believe that discretion to have been.   For these reasons, Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 3.  Unlawful Garnishment and Abuse of Process

Plaintiff claims that the Writ of Garnishment that Defendant Tara Black requested from the probate court and served upon SunTrust Bank in Florida violated of Michigan Compiled Laws § 600.4011(1)(a), and that as an attorney, Defendant Black knew or should have known the writ was in violation of Michigan law.   Plaintiff claims that the writ was wrongful because Defendants never obtained a judgment against him, and Plaintiff's property was located outside of the state.

Under Michigan Compiled Laws § 600.411(1)(a), a party may, "to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment," garnish "[p]ersonal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal

18

property to be applied is within the boundaries of this state." Plaintiff objected to the writ of garnishment on the grounds that the property garnished was in the state of Florida, and not subject to writ under the statute. Dkt # 32, Ex. L, Order on Objections to Garnishment; Ex. P at 4.[7] The court held a hearing on Plaintiff's objections, and upon a finding that Defendants could not cite any authority for serving a writ of garnishment on the Florida Bank, quashed the writ. *Id.* Ex. P. The Court ordered the garnished funds, totaling $718.80, to be released by SunTrust Bank to Plaintiff. *Id.* Ex. L, Order on Objections to Garnishment.

To the extent that Plaintiff is asserting a claim of negligence against Defendants for filing a writ of garnishment that they knew or should have known was in violation of Michigan Compiled Laws § 600.411(1)(a), Plaintiff's claim lacks merit. In *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, a physician filed suit against a number of attorneys, arguing that the malpractice lawsuit they had filed against him, which resulted in a directed verdict of no cause of action, was negligent, malicious, and an abuse of process. The Michigan Supreme Court held that the plaintiff could not establish a claim under the theory of negligence because "an attorney owes no actionable duty to an adverse party." 412 Mich. at 20, 312 N.W.2d 589.

To the extent that Plaintiff is asserting a claim of abuse of process against Defendants, this claim also fails. Plaintiff fails to state that Defendants' request for and service of the writ of garnishment was intended for the purpose of coercion or to obtain a collateral advantage not properly involved in the proceeding itself. To the contrary, it appears that the writ was requested and served for the sole purpose of collecting the funds from Plaintiff that the probate court ordered

---

[7]Plaintiff now additionally argues that the Writ was wrongful because a judgment was never obtained against him.

him to relinquish almost four months before the garnishment was issued. Defendants' Motion for Summary Judgment on this claim is therefore GRANTED.

### 4. Intentional Infliction of Emotional Distress & Defamation

To establish a cause of action for intentional infliction of emotional distress, a plaintiff must show:

> (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. A defendant is not liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675, 689 (Mich. App. 2003) (internal quotations and citations omitted); *see also Van Vorous v. Burmeister*, 262 Mich. App. 467, 481, 687 N.W.2d 132 (2004) ("The threshold for showing extreme and outrageous conduct is high.").

Plaintiff's complaint contains general allegations of intentional infliction of emotional distress. Plaintiff claims (1) Defendants instituted the criminal embezzlement proceedings against him with the intention of inflicting emotional distress upon him; (2) Defendants conspired with the Livingston County Sheriff's Department to procure his unlawful arrest, resulting in emotional distress and mental anguish; (3) Defendants' writ of garnishment against Plaintiff caused him emotional distress and mental anguish.

The facts and circumstances surrounding the incidents that Plaintiff alleges were taken with the purpose of inflicting emotional distress upon him have been detailed at length above. Viewing the evidence in a light most favorable to the Plaintiff, none of the behavior alleged by Plaintiff rises to the high threshold of extreme and outrageous conduct. Therefore, Defendants' Motion for Summary Judgment on this claim is GRANTED.

Plaintiff also pleads general allegations of defamation.  To sustain a claim for defamation, the following elements must be proven:

> (a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod ).

*Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 589, 349 N.W.2d 529, 532 (1984).  "A communication is defamatory if, considering all the circumstances, it tends to so harm the reputation of an individual as to lower that individual's reputation in the community or deter third persons from associating or dealing with that individual."  *Kevorkian v. American Medical Ass'n*, 237 Mich. App. 1, 5, 602 N.W.2d 233, 236 (1999).  Plaintiff alleges that Defendants made false claims to the Sheriff's Department in requesting it to pursue charges of embezzlement against him.  Viewing the facts in a light most favorable to Plaintiff, this claim must fail.  Even if Defendants made false allegations of fact to the Sheriff's Department, it is Plaintiff's arrest and prosecution that caused the alleged harm to his reputation.  As discussed above, these actions were taken at the discretion of the Sheriff's Department and prosecutor, and may not be attributed to Defendants.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants Livingston County and Robert Bezotte's Motion to Dismiss **[Dkt # 17]** is GRANTED.

IT IS FURTHER ORDERED that Defendants Tara Black and Shana Adkin's Motion for Summary Judgment **[Dkt # 19]** is GRANTED.

IT IS FURTHER ORDERED that this matter is DISMISSED.

21

s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE


Dated:  March 25, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 25, 2011, by electronic and/or ordinary mail.


s/Felicia Moses for LaShawn R. Saulsberry
Case Manager

22